The STATE of Texas

v.

CUONG PHU LE, Appellee

NO. PD–0605–14

Court of Criminal Appeals of Texas.

Delivered: April 29, 2015

David Michael Ryan, Houston, TX, for Appellant.

Bridget Holloway, Assistant District Attorney, Houston, TX, Lisa C. McMinn, State's Attorney, Austin, for the State.

## OPINION

NEWELL, J., delivered the opinion of the Court in which KELLER, P.J., and JOHNSON, KEASLER, HERVEY, RICHARDSON and YEARY, JJ., joined.

This case involves a search warrant based in part upon an alert from a drug-detecting dog. After the execution of the search warrant, but before a hearing on the motion to suppress, the United States Supreme Court held in *Florida v. Jardines* that law-enforcement officers' use of a drug-sniffing dog on the front porch of a home without a search warrant violated the Fourth Amendment. Consequently, this Court must determine whether the search-warrant affidavit—minus the drug-dog's alert—clearly established probable cause. The trial judge held that it did not, and the court of appeals agreed. *State v. Cuong Phu Le*, No. 14–13–00635–CR, 2014 WL 1390121 (Tex. App.–Houston [14th Dist.] April 8, 2014) (not designated for publication). We reverse because we find that, when looking at the warrant affidavit as a whole, the independently and lawfully acquired information stated in the affidavit clearly established probable cause.

## Investigation

In November 2012, Sergeant Robert Clark of the Harris County Sheriff's Department received a report from a concerned citizen that suspicious activity was taking place in a two-story house at 8603 Jubilee Drive, Houston.[1] The concerned citizen observed young Asian males arriving at the residence though no one had moved any furniture into the home. The young Asian males would arrive at the residence in the early evening hours, remain for a short period of time, and then depart. They did not engage in any normal household activities such as yard work or washing cars. The concerned citizen did not see any lights inside the residence even when the young males visited the home during the evening hours.

Sergeant Clark, who worked in the narcotics-investigations division, had extensive formal training and investigatory experience in this area, including specific training on cases involving indoor cultivation and possession of marijuana. A narcotics investigator with 35 years of experience, Sergeant Clark had handled 150 investigations involving indoor marijuana cultivation. Assigned at the time to the FBI's Houston Intelligence Support Center, Sergeant Clark had received advanced training in the detection, operation, and dismantling of indoor grow operations. Based upon this experience, Sergeant Clark was familiar with the characteristics of indoor marijuana grow operations.

After receiving the report, Sergeant Clark ran both a criminal history and a driver's license check on the concerned citizen. He found no criminal history and no driver's license suspensions. A query of the Harris County Appraisal District's online records revealed that the concerned citizen had been a home owner in Harris County for numerous years. The concerned citizen in this case requested anonymity due to safety considerations, but

---

1. The concerned citizen did not know who rented the home, but CenterPoint Energy records revealed that the utilities were in appellee's name.

nevertheless remained accountable to Sergeant Clark.

On November 6, 2012, Sergeant Clark traveled to the suspected residence at 8603 Jubilee Drive. He observed that the mini blinds were tightly drawn on every window in the residence. This was consistent with the concerned citizen's observation that no lights could be seen inside the residence.

On November 8, 2012, Sergeant Clark subpoenaed the electrical utilities records for the house from CenterPoint Energy. Appellee was the listed subscriber on the records for the suspected residence, although his driver's license listed his home address as 8335 Wayfarer Lane, also in Houston. Sergeant Clark drove to appellee's listed residence and saw a black Toyota SUV bearing Texas registration 170HZY parked in the driveway. Though the car was registered to someone else, it matched the description and license plate of a car the concerned citizen had seen parked by one of the Asian males at the suspected residence.

On November 13, 2012, Sergeant Clark traveled again to 8603 Jubilee Drive. From the sidewalk, he could plainly hear the central air conditioning unit running continuously even though the ambient temperature at the time was fairly cool. Sergeant Clark found this consistent with an indoor hydroponic grow operation because, based upon his experience and training, he knew that high-intensity metal halide grow lamps typically generate excessive heat that must be dissipated to prevent damage to the plants.

Sergeant Clark walked up the front sidewalk, which was open to all visitors, and stood at the front door. From there, Sergeant Clark could smell the distinct odor of raw marijuana. He was familiar with the odor in light of his work history in conducting investigations of indoor marijuana grows.

Sergeant Clark conducted several nights worth of nighttime surveillance sometime between November 13th and November 27th. He observed no lights inside the two-story residence other than one at the front door and a single rear first-floor light. Sergeant Clark understood that indoor marijuana grow operators often do not live at the grow house, though they must tend to the live plants on a daily basis.

Sergeant Clark spoke with Sergeant Bobby Roberts, a Narcotics Supervisor with the Houston Police Department. A police officer with 26 years of experience, Sergeant Roberts had over 900 hours of police training, including many hours of formal training in the detection and apprehension of persons involved in the trafficking of illegal narcotics. On November 27, 2012, Sergeant Roberts conducted covert surveillance of the house at 8603 Jubilee Drive. He observed the black Toyota SUV with the 170HZY license plate. After the SUV departed the residence, Sergeant Roberts conducted a traffic stop based upon traffic violations. Appellee was driving the car, and Sergeant Roberts smelled the strong odor of raw marijuana. It came from both the vehicle and appellee himself.

At that point, Sergeant Roberts called for a narcotics-detection canine.

After the dog alerted to the smell of raw marijuana at the front door of the suspected house, the magistrate issued a search warrant for 8603 Jubilee. Police executed the warrant and seized 358 marijuana plants from inside the residence. Appellee was indicted for felony possession of marijuana in January 2013.

## Suppression

Two months after the State indicted appellee, the United States Supreme Court decided *Florida v. Jardines,* —— U.S. ——, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013). In *Jardines,* the Court held that law-enforcement officers' use of a drug-sniffing dog on the front porch of a home, to investigate a tip that marijuana was being grown in the home, was a trespassory invasion of the curtilage that constituted a "search" for Fourth Amendment purposes. *Id.* at 1416. At the suppression hearing, appellee argued that (1) the use of the dog alert violated the Fourth Amendment under *Jardines,* and (2) the remaining evidence in the affidavit was based on stale facts that were insufficient to support probable cause. Both parties assumed that the dog alert should be excluded from the review and argued whether the affidavit, without it, indicated probable cause.

The trial judge granted the motion to suppress, and the Fourteenth Court of Appeals affirmed. The court of appeals recognized, as did the parties, that the central issue in the case was whether a warrant could have been issued on the basis of the information in the affidavit that remained after removal of the illegal dog sniff at the door. *Le,* 2014 WL 1390121, at *2–3. The court of appeals agreed with the State that it could properly consider the information from the concerned citizen despite his or her anonymity under a proper totality of the circumstances analysis. *Id.* at *3. However, the court of appeals did not consider Sergeant Clark's observations on November 13th when he smelled raw marijuana at the front door of the residence because, according to the court of appeals, that information had become stale by the time the warrant was issued. *Id.* at *5. After disregarding both the illegal dog sniff and Sergeant Clark's observations on November 13th, the court of appeals held that the remaining facts in the affidavit did not clearly establish probable cause that marijuana would be found at the suspected place. We granted the State's petition for discretionary review, asking whether the court of appeals was correct on that count given that this case involves the continuous enterprise of growing marijuana.[2]

## Standard of Review

■■■ Appellate courts review a trial court's ruling on a motion to suppress by using a bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing *de novo* the trial court's application of the law. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Ordinarily, the preference for searches based upon warrants requires reviewing courts to give "great deference" to a magistrate's determination of probable cause. *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *see also Swearingen v. State,* 143 S.W.3d 808, 811 (Tex. Crim. App. 2004). "[I]n a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall." *United States v. Ventresca,* 380 U.S. 102, 106, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *see also Jones v. State,* 364 S.W.3d 854, 857 (Tex. Crim. App. 2012) (" '[T]he

---

**2.** The State did not raise the issue of good faith to the trial court below at the suppression hearing. Because any Article 38.23(b) good-faith issue has been procedurally barred, we consider only the propriety of the search based upon the warrant. *Le,* 2014 WL 1390121, at *6.

magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon *de novo* review.'") (quoting *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010)).

■■■■ But that deference to the magistrate is not called for when the question becomes whether an affidavit, stricken of its tainted information, meets the standard of probable cause. *McClintock v. State*, 444 S.W.3d 15, 19 (Tex. Crim. App. 2014). This is, in part, because a "magistrate's judgment would have been based on facts that are no longer on the table," and there is "no way of telling the extent to which the excised portion influenced the magistrate judge's determination." *United States v. Kelley*, 482 F.3d 1047, 1051 (9th Cir. 2007). More importantly, it reinforces the principle that "[a] search warrant may not be procured lawfully by the use of illegally obtained information." *Brown v. State*, 605 S.W.2d 572, 577 (Tex. Crim. App. 1980), *overruled on other grounds by*

*Hedicke v. State*, 779 S.W.2d 837 (Tex. Crim. App. 1989). "When part of a warrant affidavit must be excluded from the calculus, ... then it is up to the reviewing courts to determine whether 'the independently acquired and lawful information stated in the affidavit nevertheless clearly established probable cause.'" *McClintock*, 444 S.W.3d at 19.[3] A search warrant based in part on tainted information is nonetheless valid if it clearly could have been issued on the basis of the untainted information in the affidavit. *Brown*, 605 S.W.2d at 577.

■■■■ Yet, reviewing courts are still required to read the purged affidavit in accordance with *Illinois v. Gates*. Courts should interpret the affidavit in a common-sensical and realistic manner, drawing reasonable inferences from the information. *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). Indeed, an appellate court should not invalidate a warrant by interpreting the affidavit in a hyper-technical manner. *Bonds v. State*, 403 S.W.3d

---

**3.** Some federal courts have interpreted this evaporation of deference as endorsement of a *de novo* review of a purged warrant affidavit. *See, e.g., United States v. Ruiz*, 664 F.3d 833, 838 (10th Cir. 2012) ("'Whether a corrected affidavit supports a finding of probable cause is a question of law that we review *de novo*.'") (quoting *United States v. Garcia–Zambrano*, 530 F.3d 1249, 1254 (10th Cir. 2008)); *United States v. Spears*, 673 F.3d 598, 605 (7th Cir. 2012) (same). This move away from deference to the magistrate's determination has its roots in cases in which the affiant provided false or misleading information in violation of *Franks v. Delaware. See, e.g., United States v. Namer*, 680 F.2d 1088, 1095 n.12 (5th Cir. 1982) (rejecting the presumption of deference when warrant affidavit included reckless and material misrepresentations). Without explicitly endorsing a *de novo* review of purged warrants, this Court has extended this no-more-deference rule to situations in which the affidavit was based upon illegally obtained information. *See, e.g.,*

*McClintock*, 444 S.W.3d at 19 (holding that no deference is required when magistrate's probable cause determination was based in part on illegal drug-dog alert); *Castillo v. State*, 818 S.W.2d 803, 805 (Tex. Crim. App. 1991) (refusing to defer to the magistrate's probable cause determination when affidavit contained information from illegal wiretaps), *overruled on other grounds by Torres v. State*, 182 S.W.3d 899, 901–02 (Tex. Crim. App. 2005); *cf. Swearingen*, 143 S.W.3d at 811 (rejecting *de novo* standard of review of *untainted* search warrants). However, applying the flexible, totality-of-the-circumstances approach required by *Illinois v. Gates* resolves this case even without affording the magistrate the traditional level of deference. *United States v. Kolodziej*, 712 F.2d 975, 976–77 (5th Cir. 1983) (applying *Gates'* totality-of-the-circumstances approach to review of a purged affidavit).

867, 873 (Tex. Crim. App. 2013). Probable cause exists if, under the totality of the circumstances, there is fair probability that contraband or evidence of a crime will be found at a specified location. *State v. McLain,* 337 S.W.3d 268, 272 (Tex. Crim. App. 2011). It is a flexible, non-demanding standard. *Id.*

### Independent Information Clearly Established Probable Cause

■ We recently held in *McClintock v. State* that—after excising evidence that a police drug-dog sniff at McClintock's door indicated the presence of narcotics—the balance of a search-warrant affidavit failed to clearly establish probable cause. In *McClintock,* the remaining facts underlying the probable cause finding by the magistrate were: (1) an unverified tip; (2) the activity of McClintock coming and going, "at hours well before and after the business hours of the business on the first floor," which was characterized as being "consistent with possible narcotics activity," and (3) Officer Arthur's smell of what was known to him "from training and experience to be, marijuana" from the outside of "the location." *McClintock,* 444 S.W.3d at 17–19. We noted that the reference to "the location" in the affidavit did not clearly establish probable cause as to the presence of narcotics at the defendant's residence when considered along with the other remaining information because that term was ambiguous in the context of the warrant affidavit. *Id.* at 19.

But the search-warrant affidavit in this case presents more information and less ambiguity.

■ Notably, the tip in this case came from a concerned citizen in good standing in the community. A citizen-informer is presumed to speak honestly and accurately; the criminal snitch who is making a quid pro quo trade enjoys no such presumption. *State v. Duarte,* 389 S.W.3d 349, 356 (Tex. Crim. App. 2012). The citizen informant in this case had no criminal history or driver's license suspensions and had been a home owner in Harris County for numerous years. The citizen informant remained accountable to Sergeant Clark despite requesting anonymity due to safety considerations. And in contrast to the tipsters in *Jardines* or *McClintock,* the citizen informant in this case provided sufficient information to evaluate the basis of the informant's knowledge or veracity.[4]

More importantly, the concerned citizen provided detailed information that Sergeants Clark and Roberts verified over their three-week investigation. Consistent with the concerned citizen's observations, appellee did not appear to live at the Jubilee residence even though he was responsible for the utilities and he came and went in the black Toyota SUV bearing Texas registration 170HZY. The mini blinds were tightly drawn on every window. The central air conditioning unit was running continuously on November 13th.[5] At nighttime, no lights were visible inside the

---

4. *McClintock v. State,* 405 S.W.3d 277, 282 (Tex. App.-Houston [1st Dist.] 2013) ("Affiant received information that marijuana was being grown inside the 2nd floor residence located at 412 West Clay, Houston, Harris County, Texas."); *Jardines,* 133 S.Ct. at 1413 ("In 2006, Detective William Pedraja of the Miami–Dade Police Department received an unverified tip that marijuana was being grown in the home of respondent Joelis Jardines.").

5. The court of appeals noted without conclusion that, "[t]he 2012 affidavit claims that it was 38 degrees Fahrenheit on November 13, 2012. However, appellee's motion to suppress included a weather report for 'Houston Hull, Texas,' which detailed that on Novem-

two-story residence other than one light at the front door and a single rear first-floor light. While there could be innocent explanations for these facially unremarkable facts, reviewing courts are not precluded from drawing inculpatory inferences from the stated facts described in the affidavit as characteristic and consistent with the operation of an indoor marijuana grow operation.[6] *Rodriguez*, 232 S.W.3d at 61.

 Finally, Sergeant Clark verified the smell of raw marijuana at the front door of the residence.[7] After three weeks of surveillance, Sergeant Roberts also smelled raw marijuana on appellee's person and in appellee's car after he observed appellee leave the suspected place. The odor of marijuana emanating from a residence, as well as one of its occupants, can provide probable cause to believe an offense has been or is being committed. *Estrada v. State*, 154 S.W.3d 604, 609 (Tex. Crim. App. 2005). As the United States Supreme Court observed in *Johnson v.*

*United States*, "If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant. Indeed it might very well be found to be evidence of most persuasive character." 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948); *see also Davis v. State*, 202 S.W.3d 149, 157 (Tex. Crim. App. 2006) (upholding search warrant based upon odor officer associated with manufacture of methamphetamine in conjunction with background information that did not establish probable cause by itself due to insufficient specificity). While the odor of marijuana may not be enough to justify a warrantless search based upon exigent circumstances, it can still provide probable cause to support a search warrant. *Estrada*, 154 S.W.3d at 608.

 In sum, the independent and lawfully acquired information in the search-

---

ber 13, 2012, the high was 60 degrees Fahrenheit and the low was 51 degrees Fahrenheit." *State v. Cuong Phu Le*, 2014 WL 1390121, at *1 n.2. We agree with the State that the continuously running air-conditioning unit was a relevant fact under either temperature.

6. For example, the affidavit included information that grow operators often do not reside in the grow house, but still must tend to the live plants on a daily basis. Additionally, the affiant averred that the grow operators run air-conditioning units to prevent damage to the growing marijuana plants from the excessive heat generated by metal halide grow lamps. A more thorough affidavit could have provided detail regarding whether the power consumption at the residence was significantly higher (no pun intended) than average. *See, e.g., State v. Hook*, 255 Mont. 2, 839 P.2d 1274, 1276 (1992) (noting search-warrant affidavit "recited in detail the power usage, the times of residence by the defendant, previous usage by former occupants, normal residential usage, and comparisons as to these facts

both specifically and generally"). But the focus is not on what other facts could or should have been included in the affidavit; the focus is on the combined logical force of facts that are in the affidavit. *Rodriguez*, 232 S.W.3d at 62.

7. This detail stands in contrast to the ambiguous reference to "location" at issue in *McClintock*. There, the affiant's failure to specify whether he detected the odor of marijuana from a separate, upstairs residence created too much ambiguity to establish probable cause. *McClintock*, 444 S.W.3d at 19–20. But here, the affiant stated that Sergeant Clark smelled the odor of raw marijuana while standing at the front door of the place to be searched. The affiant went on to state that he detected the same odor on appellee after stopping appellee for a traffic violation that occurred shortly after the affiant observed appellee leave the place to be searched.

warrant affidavit—when viewed as a whole and in a common-sense manner—clearly established probable cause. Appellee's argument that Sergeant Clark's observations on November 13th had become stale resulted in consideration of each fact or episode in the warrant affidavit in isolation. Indeed, a common-sense reading of the entire affidavit as a whole reveals facts pointing to the "manufacture" of drugs rather than mere possession. As this Court observed in *Jones v. State*, " 'evidence of ongoing criminal activity will generally defeat a claim of staleness.' " 364 S.W.3d 854, 861 (Tex. Crim. App. 2012) (quoting *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001)). Courts across jurisdictions have rejected staleness claims when ongoing marijuana grow operations are involved. *See, e.g., United States v. Minis*, 666 F.2d 134 (5th Cir. 1982); *United States v. Myers*, 106 F.3d 936 (10th Cir. 1997); *United States v. Greany*, 929 F.2d 523 (9th Cir. 1991); *State v. Duarte*, 237 Or.App. 13, 238 P.3d 411 (2010); *Ragland v. Commonwealth*, 191 S.W.3d 569 (Ky. 2006). Rather than look at each episode in isolation, a cumulative view of the scent evidence reinforces the determination of probable cause.[8] *United States v. Cantu*, 405 F.3d 1173, 1177–178 (10th Cir. 2005) (viewing supporting facts in cumulative fashion rather than in isolation).

It has been suggested that the smell of the marijuana by itself on November 27th was insufficient to establish probable cause to support the issuance of a search warrant. But no one is arguing that. Rather, this evidence—considered in combination with the other facts—demonstrates probable cause. In *Davis v. State*, this Court upheld a search-warrant affidavit based in part upon a trained officer's recognition of an odor he associated with the manufacture of methamphetamine. *Davis*, 202 S.W.3d at 157. The affidavit also included information from a Crime Stopper's tip as well as observations from confidential informants that this Court acknowledged was insufficiently explicit when considered in isolation. *Id.* Significantly, this Court agreed with the parties in *Davis* that this background information was insufficient to establish probable cause because the background information was essentially stale. *Id.* at 155 ("None of the background information gives a time frame that would corroborate the existence of methamphetamine on the premises when the warrant was requested."). But when this Court considered that background information along with the trained officer's perception—on the day the affidavit was drafted—of the distinctive odor he knew from his experience to be associated with the manufacture of methamphetamine coming from the residence, this Court held that information sufficient to establish probable cause. *Id.* at 157 ("We also note that the background information, which all agree was insufficiently specific when considered

---

**8.** As the State points out, "[A]ppellee did not smell of marijuana hours after leaving the house [as the Court of Appeals stated], but smelled of it after hours of being at the suspected grow house." The warrant affidavit reads:

On 27 November 2012, your Affiant observed the Black Toyota SUV bearing Texas registration 170HZY. Your Affiant established covert surveillance of the suspected place. The vehicle was stopped for traffic violations once it departed several hours later. The driver of the vehicle was identified as CUONG LE Asian male date of birth 10/30/1982. Your Affiant smelled a strong odor that he knows through training and experience to be that of raw marijuana coming from the vehicle and on the person of LE.

Appellee likewise forthrightly acknowledges this fact, but says that the "mistake amounts to a distinction rather than a difference."

in isolation, was nevertheless relevant to the probable cause determination because it tends to corroborate [the officer's] statement.").

Considering the same type of "background" information in this case along with Sergeant Roberts' observations on the day the warrant was issued clearly establishes a fair probability that contraband would be found at the residence. *Davis*, 202 S.W.3d at 157. Appellee argues that the information acquired prior to Sergeant Roberts's observation should be disregarded as stale even though that information would arguably establish probable cause if it had been gathered shortly before the search warrant was signed. *Davis* makes clear that appellee's approach is inconsistent with *Illinois v. Gates*, and that the November 13th information—including Sergeant Clark's legal human sniff—can be considered in conjunction with the smell of raw marijuana observed on appellee and in appellee's car shortly after appellee had left the suspected residence. Under a proper totality of the circumstances analysis, the lawfully obtained information contained in the search warrant in this case clearly established probable cause to search.

## Conclusion

This case provides a useful book-end to our decision in *McClintock*. At bottom, the drug-dog sniff in this case was not nearly as integral to the justification for the search warrant as it was in *McClintock* or even *Jardines*. The olfactory and visual observations of Sergeants Clark and Roberts verified a concerned citizen's firsthand description of the atypical activity around the Jubilee residence, activity consistent with the existence of a marijuana growing operation in the residence. Because this untainted information in the search-warrant affidavit clearly established probable cause, we reverse and remand to the trial court.

MEYERS, J., filed a dissenting opinion.

ALCALA, J., filed a dissenting opinion.

## *DISSENTING OPINION*

Meyers, J.

The majority reverses the trial court and the court of appeals and concludes that probable cause exists for the search warrant in this case despite the fact that the drug-sniffing dog's alert could not be considered under *Florida v. Jardines*, —— U.S. ——, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013). However, I believe that the majority has stretched its reasoning in order to have the desired outcome for the State here. In the absence of the dog-sniff evidence, probable cause for a search warrant was not established.

The evidence presented in the affidavit for the search warrant—minus the dog sniff—included the report from the concerned citizen, an officer's observation that the blinds were tightly drawn, the fact that the utilities were registered to Appellee, the fact that Appellee's drivers license bore a different home address, an officer's observation of the smell of marijuana outside the home two weeks prior, an officer's observation that the air conditioning was running when it was 38 degrees outside, and an officer's observation of the smell of marijuana from Appellee's vehicle when stopped for traffic violations. I do not believe that these facts establish probable cause, and it insults our intelligence for the State to argue that the magistrate approved this warrant based on anything other than the dog sniff. If this evidence

were sufficient to establish the probable cause for the warrant, then why would the officers have waited to perform the traffic stop and conduct the dog sniff before requesting the warrant?

This case is similar to *Wehrenberg v. State*, 416 S.W.3d 458 (Tex. Crim. App. 2013), in which the court was also faced with a search warrant that was obviously based on illegal probable cause.[1] However, rather than stop themselves from repeating the same mistake, the court has again come back and validated a warrant that was originally based on facts—here, the dog sniff—that are not valid to constitute probable cause under our law. When one disregards the dog sniff, the remaining evidence in this case does not establish probable cause, and it was certainly not an abuse of discretion for the trial judge to conclude otherwise. For these reasons, I would uphold the ruling of the court of appeals and I respectfully dissent.

## DISSENTING OPINION

ALCALA, J., filed a dissenting opinion.

Because there is a gap of about twelve days between almost all of the activities described in the probable-cause affidavit and the issuance of the search warrant and because the warrant fails to show probable cause for an ongoing indoor marijuana-grow operation, I would uphold the judgments of both the trial court and the court of appeals that the search warrant was issued without probable cause based on stale information. Although I recognize that what would otherwise be stale information may support a warrant if it shows

probable cause for an ongoing criminal activity, I conclude that the facts in the affidavit, when viewed in their totality, fail to show that type of probable cause. More particularly, unlike the majority opinion that largely paraphrases the affidavit to characterize the facts as being more favorable to the State than they are, I specifically quote the pertinent portions of the affidavit and consider the precise facts that were presented to the magistrate. Furthermore, although I note that this search may have been upheld had the State argued that the good-faith exception applicable to search warrants should apply, the State forfeited that argument by failing to present it to the trial court. I agree with both the trial court and the court of appeals that the evidence should be suppressed because the search warrant is unsupported by probable cause. I, therefore, respectfully dissent from the Court's judgment reversing the judgment of the court of appeals.

## I. There are Six Significant Problems with the Search Warrant

There are six significant problems that occurred here: (1) dog-sniff evidence was used as probable cause for this warrant, but the Supreme Court has now disallowed that type of evidence in the manner that it was obtained in this case; (2) the officer's expert opinion about the citizen's tip is unsupported by the facts; (3) the officer's general statements about high electricity usage being indicative of a marijuana growing operation are immaterial to this case; (4) the officer's general statements about the significance of supplemental air

---

1. In *Wehrenberg,* officers made an unlawful and unwarranted entry into a home, conducted a sweep, and only *then* secured a search warrant. The State argued that the probable cause for the warrant was based on a confidential informant, when in reality it was based upon the officers' illegal entry into the home.

conditioning are immaterial to this case; (5) the vast majority of the information used to sustain the warrant was stale information obtained about two weeks before the search warrant was obtained; and (6) there is inadequate information from which to infer that this was an ongoing marijuana growing operation. Taking these six problems with the search warrant into consideration, the totality of the facts fail to establish probable cause for this search.

First, as this Court's majority opinion accurately observes, the dog-sniff evidence used as part of the probable cause to support this warrant may no longer be considered under *Florida v. Jardines,* ——— U.S. ———, 133 S.Ct. 1409, 1417–18, 185 L.Ed.2d 495 (2013). The judge who signed the search warrant did so under the belief that the dog had alerted to the smell of narcotics at the residence shortly before the warrant was issued, but, because the dog-sniff evidence was obtained through an unlawful warrantless search, this Court may not consider that evidence in determining whether there was probable cause to support the search warrant. *See id.* Without the dog-sniff evidence, the only fact that occurred shortly before the warrant was obtained was the smell of raw marijuana on appellee and in his car after he visited the house, and, as I explain further below, that fact fails to establish probable cause that officers would find raw marijuana inside the house.

Second, the officer's expert opinion about the citizen's tip is unsupported by the facts, and, therefore, that opinion must be disregarded. The concerned citizen indicated that he or she knew the owner of the residence, who rented it to an unknown person, and that ever since the property was rented, the citizen had seen "suspicious activity" in the form of young Asian males visiting the residence in the evening for short periods without turning on the lights and without residing at the location. The warrant states,

> The current occupants, who are described as young Asian males[,] started arriving at the residence several months ago. The [concerned citizen] never observed any type of furniture being moved into the residence. The [concerned citizen] reported that the Asian males arrive at the residence during the early evening hours. These individuals remain at the residence for a short period of time before departing. These individuals do not appear to reside at the residence and do not engage in normal house hold [sic] activities, i.e. yard work, washing cars, etc. The [concerned citizen] described one of the vehicles being driven by the Asian males as a black Toyota SUV.... The [concerned citizen] further stated that no lights are seen inside the residence, even when the Asian males arrive during night time hours.

Importantly, the concerned citizen's tip never mentions marijuana or any controlled substance. Although the activities described by the concerned citizen may be peculiar and would suggest that officers should investigate, that information, standing alone, cannot properly form the basis for the officer's expert opinion linking the citizen's observations to an indoor marijuana-grow operation. The warrant states, "Sergeant Clark knows through training and experience in conducting investigations and seizure of indoor marijuana grow operations that the activities described by the [concerned citizen] are characteristic [of] and consistent with the operation of an indoor marijuana grow operation." The majority opinion seems to interpret this

statement from Sergeant Clark as if he were basing his opinion on a consideration of all the officers' observations during their investigation of the case, but instead he was referring only to the "activities described by the [concerned citizen]," and nothing about those activities was particularly suggestive of an indoor marijuana-grow operation. The officer's opinion that the concerned citizen's tip was consistent with the characteristics of an indoor marijuana-grow operation is speculative because it is based on the mere facts that young Asian males regularly visit a house during the evening hours without turning on overhead lights and without moving in furniture and that whoever resides at the house does not garden or wash a car. Although the citizen's tip may have suggested that something was amiss, it is a stretch to suggest that the tip reasonably supported the officer's suspicion that the residence contained an indoor marijuana-grow operation, or that the tip supported probable cause to suggest that marijuana might be found in the house when the search warrant was issued about one month later.

Third, the officer's general observation that high electricity usage is indicative of an indoor marijuana-grow operation is immaterial to our analysis of this case because there was no evidence that this residence actually had high electricity usage. The warrant states,

> Your affiant and Sergeant Clark know, through training and experience in conducting investigations/seizures of indoor marijuana grow operations that: the operations consume large quantities of electrical power. The large electrical power consumption is required to power high intensity metal halide grow light systems, air purification systems, sup-

plemental air conditioning systems, water pumping and filtration systems.

Despite mentioning the importance of evidence showing high electricity usage, the affidavit then fails to state that there was any irregular electricity usage at the residence. An appellate court's review of the adequacy of a probable-cause affidavit is limited to the facts and circumstances contained within the four corners of the document. *See Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013). At most, the affidavit states that the utilities were registered to appellee, but it says nothing more about the quantity of electricity used at the residence. Because the warrant indicates that irregular electrical usage is an important piece of evidence to show an indoor marijuana-grow operation but then fails to show that any irregular electrical usage actually occurred at this residence, that fact weighs heavily against a finding that there was probable cause to show the existence of an indoor marijuana-grow operation. *See id.*

Fourth, the officer's general statements indicating "that hydroponic marijuana grow operators install supplemental air conditioning units in an effort to dissipate" the "excessive heat" from "high intensity metal halide grow lamps" are similarly immaterial to this case. Although this portion of the warrant sets up the expectation that the evidence will show the existence of supplemental air conditioning units, the evidence instead merely shows that, on one occasion, the officer observed the central air conditioner continuously running when it was cold outside. The warrant states, "While standing at the sidewalk in front of the residence, Clark could plainly hear the central air conditioning unit, which is located at the north end of the residence, running continuous-

ly." The mere fact that, on one occasion, a central air conditioning unit was left continuously running on a cold day does not suggest the existence of a marijuana-grow operation. And nothing in the warrant suggests that the house had supplemental air conditioning units, which, according to the affidavit, would be expected as part of a marijuana-grow operation. Despite the actual language in the affidavit that focuses on the connection between "supplemental air conditioning units" and indoor marijuana-grow operations, the majority opinion recharacterizes the affidavit by deciding that a central air conditioner that runs on a single cold day is information that equates with supplemental air conditioning units that are installed for indoor marijuana-grow operations that must run daily to keep the high intensity halide grow lamps from damaging the plants due to their excessive heat. Courts should not recharacterize the facts that were before the magistrate and must consider only those facts contained within the four corners of the affidavit. *See* id. Because the officer's general statements discussing the importance of supplemental air conditioning units is not linked to the facts in this case, in which there were no supplemental air conditioning units nor anything other than a central air conditioner left running on a single cold day, that evidence must be discounted as immaterial to this case.

Fifth, the vast majority of the information used to support the warrant was stale and, absent probable cause to show an ongoing criminal activity, that information fails to show probable cause that marijuana would be found at the residence as of the date of the warrant's issuance. The search warrant was prepared and signed on November 27, 2012, based on activities that can be divided into three general periods: (1) the activities occurring between November 1 and November 13, 2012, as delineated in the chart below, (2) the activities occurring at some unknown time in November, and (3) the activities occurring on November 27, 2012.

The following chart shows that, had the search been conducted around mid-November, the officers likely would have had probable cause to search for marijuana in the house, but because the search was not conducted until late November, the information had become stale.

| Sometime between November 1 and 5, 2012 | November 6 and 8, 2012 | November 13, 2012 |
|---|---|---|
| Credible concerned citizen gives tip. | Officer observes mini blinds tightly drawn on every window in the residence. | Sergeant Clark walked to the front door and smelled raw marijuana. |
| Citizen reports that no furniture was moved in, no one lives at the residence, no lights are ever turned on in the residence, and no normal household activities occur at the residence. | Utilities at residence are registered in appellee's name, but his driver's license and concealed gun license show a different address. | The central air conditioning unit was running continuously. |
| Young Asian males arrive in a black Toyota SUV in the early evening and leave shortly thereafter. | The same black Toyota SUV is seen at a different address and is registered to someone other than appellee. | The ambient temperature outside the residence was 38 degrees. |

Aside from these events that occurred between November 1 and 13, the affidavit additionally described events occurring sometime in November, and an event that occurred on November 27. These additional events, even when examined in conjunction with those described in the chart above, were inadequate to establish probable cause for the search that occurred in late November.

Without stating any precise dates, the probable-cause affidavit indicates that Sergeant Clark conducted "night time surveillance at the suspected place for several nights. He observed that no lights were visible inside the residence other than at the front door, and a single rear first floor light." Based on the observation that there was dim lighting in the house for several nights, the affidavit suggested that this fact, combined with the observations made by the concerned citizen, was evidence signifying a marijuana-grow house. The affidavit states:

The officers know through training and experience in investigat[ing] marijuana grow operations that the operators often do not reside in the grow house. The officers also know through these investigations that the operators must tend to the live plants on a daily basis.

Aside from the reasonable inference that Sergeant Clark did not observe anyone residing at the house, the remainder of his statement is unconnected to the behavior that he personally observed. Nothing in the sergeant's affidavit suggests that he saw anyone coming and going on a daily basis or that he ever observed the driver of the Toyota truck going to the location at any point between the time when the concerned citizen contacted the police and approximately a month later when appellee was arrested after leaving the location. In the absence of anything to show that, during the month of November, after the citizen contacted the police, the officers ever observed daily visits to the location, there

is an inadequate foundation for the sergeant's opinion that there was an ongoing marijuana-grow operation. *See id.* Again, the majority opinion focuses on the affidavit's statements that the lack of lighting suggests that no one lived at the house, but then, in seeming contradiction, the majority opinion does not consider that nothing in the affidavit shows that anyone was seen visiting the house at all, much less on a daily basis, for the entire month from the time of the citizen's tip to the time of the stop of appellee's car, and that, according to the affidavit, daily visits would be necessary to tend to marijuana plants in an indoor marijuana-grow operation.

In addition, the search warrant does not describe the dates on which the surveillance occurred. Presumably this surveillance occurred between November 13 and November 27, 2012, because the paragraphs in the probable-cause affidavit appear to be discussing events in chronological order, but there is nothing in the warrant to indicate whether the surveillance occurred on November 13, 14, and 15, or on November 24, 25, and 26, or some other three-day interval.

Although I conclude that it is proper to infer that the events occurred at some point between November 13 and November 27 based on a reasonable assessment that the events described in the affidavit appear in chronological order, it would not be reasonable to further infer that the events occurred at the later point in time because there is nothing from which that inference could be reasonably made. Except for the traffic stop of appellee, therefore, all of the activities described in the probable-cause affidavit can reasonably be determined to have occurred during the first weeks of November 2012, which was about one to two weeks before the search warrant was signed on November 27.

Only one event that this Court properly can consider occurred shortly before the search warrant was issued, and that event fails to establish probable cause for the search of the house. On November 27, the affiant observed the same black Toyota SUV at the suspected residence, and it stayed there for several hours. After it left the residence, it was stopped for traffic violations, and the officer smelled "a strong odor that he knows through training and experience to be that of raw marijuana coming from the vehicle and on the person" of the driver, who was appellee. But the presence of the raw marijuana smell in the car alone creates no "fair probability" that marijuana would be found inside the residence, and, therefore, the smell cannot show probable cause to support the search warrant. *See Rodriguez v. State,* 232 S.W.3d 55, 60 (Tex. Crim. App. 2007) ("Probable cause exists when, under the totality of the circumstances, there is a 'fair probability' that contraband or evidence of a crime will be found at the specified location."). Because there was no probable cause to show an ongoing criminal activity, as I explain in the next section, and because the dog-sniff evidence that the judge who signed the warrant considered must be excluded from our consideration, as I have explained above, the only timely information supporting the issuance of the search warrant was the smell of raw marijuana observed during the traffic stop, and that information was inadequate to show probable cause that there would be marijuana in the house.

Sixth, the search warrant lacked probable cause to show the existence of an ongoing criminal activity. In *Jones v. State,* this Court "suggested that time is a less important consideration when an affidavit recites observations that are consistent with ongoing drug activity at a defendant's

residence." *Jones v. State*, 364 S.W.3d 854, 860 (Tex. Crim. App. 2012). This Court noted with approval that "federal circuits have held that the nature of the activity must be considered, and that, in appropriate circumstances, years could pass without information becoming stale." *Id.* at 861 (citations omitted). In short, evidence of ongoing criminal activity will generally defeat a claim of staleness. *Id.* But in the absence of an ongoing criminal activity, information related to a drug offense will soon become stale. *Id.*

Examining the information in the search warrant in its totality, it fails to establish probable cause as to the existence of an ongoing indoor marijuana-grow operation. The facts show that no one was living in a residence for a period of anywhere from one to three months; young Asian males would reportedly visit the residence in the evenings and stay a short while, but the affidavit includes no information about whether they returned at all between the time of the citizen's tip and the stop of appellee; no light was emitted from the residence; on one day of one month, the blinds in the house were tightly shut, but the affidavit includes no information as to whether the blinds were shut at any other point in time during the month of the officer's surveillance; on one occasion, an officer smelled raw marijuana outside of the front door of the house; appellee did not live there but paid the utilities there; and one to two weeks after those events, on one occasion after he had been there for several hours, appellee and his car smelled like raw marijuana. According to the affidavit, evidence of high electricity usage and supplemental air conditioning units would have been indicative of an ongoing marijuana-grow operation, but no evidence of either of these circumstances was included in the affidavit. *See Bonds,* 403 S.W.3d at 873. Furthermore, according to the affidavit, daily visits to an indoor marijuana-grow house are necessary to tend to the plants when someone does not live at the residence, but the affidavit then fails to include any information to show that there were any visits to this location during the month between the citizen's tip and appellee's arrest.

Assuming that all of these facts occurred shortly before the search warrant was signed, they arguably provide probable cause to believe that there might be marijuana in the house. The totality of these facts, however, is inadequate here because there was about a two-week gap of time between almost all of these facts and the issuance of the warrant. In short, all of the facts were stale, except for the smell of raw marijuana on appellee and in his car, and that smell was inadequate to establish probable cause for the search of the house.

To overcome the staleness of the facts presented in the probable-cause affidavit, the affidavit would have had to show probable cause of an ongoing criminal activity, but it failed in this respect. I note that, in assessing whether information that might otherwise be stale can support a probable-cause determination in light of the existence of an ongoing and continuous drug enterprise, courts have considered factors such as confirmation of ongoing drug activity from confidential informants; the defendant's prior drug-trafficking activities; and direct observations by law-enforcement agents indicating drug-trafficking activity.[1] By contrast, here, there was little more than the smell of raw marijuana at

---

1. *See, e.g., United States v. Rojas–Alvarez,* 451 F.3d 320, 332 (5th Cir. 2006) (information in probable-cause affidavit was not stale due to existence of ongoing drug enterprise; affida-

the front door of the house on a single day to suggest that there was any drug activity at all at that location, let alone a "longstanding, ongoing pattern of criminal activity." *United States v. Rojas–Alvarez*, 451 F.3d 320, 332 (5th Cir. 2006) (citations omitted). Omitting the officer's general observations about marijuana-grow operations that were unconnected to the facts of this case and the impermissible dog-sniff evidence, the remainder of the affidavit contains isolated facts that, even taken together, do not amount to probable cause to believe that there was an ongoing indoor marijuana-grow operation.

## II. Good–Faith Exception for Search Warrants in Texas

In light of the numerous problems delineated above, the State should have asserted the good-faith exception to the exclusionary rule applicable to search warrants in an attempt to salvage this search. Because it failed to assert that legal theory as

vit clearly showed that defendant's family had been involved in drug dealing for several years and that confidential informant had recently purchased drugs from defendant's family members in controlled buys; additional information included rental-car histories and pattern of border crossings); *United States v. Myers*, 106 F.3d 936, 939 (10th Cir. 1997) (information was adequate to establish probable cause for ongoing and continuous marijuana-grow operation, and thus was not stale, when confidential informant told police that defendant was growing marijuana; a check of electrical records indicated high electrical and water usage at defendant's residence; and defendant had prior drug conviction); *United States v. Pena–Rodriguez*, 110 F.3d 1120, 1130 (5th Cir. 1997) (information in probable-cause affidavit described "longstanding, ongoing pattern of criminal activity," and thus was not stale, when affidavit included information from co-conspirator describing manner in which drugs were transported across country in hidden compartments, as well as "contemporary observations of government agents that tended to corrobo-

a basis for upholding this search in the trial court, the State cannot obtain the benefit of that law in this Court.

Texas Code of Criminal Procedure Article 38.23(b) permits the admission of evidence obtained by an officer in violation of any provisions of the Constitution or laws of the State of Texas or the United States when "the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." *See* TEX. CODE CRIM. PROC. art. 38.23(b); *McClintock v. State*, 444 S.W.3d 15, 20–21 (Tex. Crim. App. 2014) (holding that, excluding the unlawfully obtained dog-sniff evidence, the remaining portion of the search warrant did not establish probable cause, and, therefore, appellate court should consider whether the search should be upheld under the good-faith exception applicable to search warrants). Had the State argued to the trial court that the search warrant was obtained in

rate" co-conspirator's statements; because reasonable officer could have believed warrant was based on probable cause, good-faith exception applied); *United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991) (information in probable-cause affidavit was adequate to establish ongoing marijuana-grow operation when it included statements from informant indicating that defendant had "openly discussed" plans to manufacture marijuana at his home, and when it included information regarding defendant's prior grow operation at another residence); *United States v. Minis*, 666 F.2d 134, 137, 140 (5th Cir. 1982) (information was adequate to establish probable cause for ongoing marijuana-grow operation, and thus was not stale, when police had intercepted incriminating phone calls in which defendants referred to volume and size of marijuana plants and to the present and past years' crops; these telephone conversations "clearly indicated that the growing of the marijuana was a continuing process").

good faith reliance on the dog-sniff evidence that was permissibly obtained before the *Jardines* decision, I might have voted to uphold the search conducted pursuant to the invalid search warrant under that legal theory. *See Jardines*, 133 S.Ct. at 1417–18.

### III. Conclusion

All of the events described in the affidavit supporting the search warrant occurred about two weeks before the warrant was issued, and the sole event, the smell of raw marijuana on appellee and in his car, that occurred shortly before the issuance of the warrant fails to establish probable cause for the search of the house. Furthermore, the totality of the affidavit fails to establish probable cause of an ongoing criminal activity that would permit a court to consider the stale information. Because I conclude that the search warrant was unsupported by probable cause, I would uphold the judgments of both the trial court and the court of appeals, and, therefore, I respectfully dissent.